IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:22-cr-47 |
| | ) | |
| PATRICK TATE ADAMIAK, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW the United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney, William D. Muhr, Assistant United States Attorney, and Victoria Liu, Special Assistant United States Attorney for the Eastern District of Virginia, and respectfully files its response to Defendant's motion to dismiss ("Motion"). In support thereof, the government avers the following:

**ARGUMENT**

The United States respectfully opposes the defendant's motion to dismiss. The defendant contends that the indictment fails to allege offenses, that the relevant statutes defenses are unconstitutionally vague and must be construed using the rule of lenity, that Congress exceeded its authority under the tax and spending clauses, and that the charges here violate the Second Amendment. All of the defendant's arguments fail, as explained below.

**I.     The Indictment Sufficiently Charges Offenses.**

An indictment is sufficient if it "(1) alleges all of the elements of the offense; (2) fairly informs the defendant of what he must be prepared to meet; (3) protects him against double jeopardy; and (4) enables the Court to determine whether the facts alleged are sufficient in law to

1

withstand a motion to dismiss or to support a conviction." *United States v. Marra*, 481 F.2d 1196, 1199 (6th Cir. 1973). As an initial matter, here the superseding indictment meets all of these elements in that it states the specific sections of the statutes that were violated, gives the approximate timeframes for the offenses, and gives a brief description of the offenses.

      A. Defendant prematurely asks the Court to look beyond the four corners of the superseding indictment.

In support of his argument to dismiss the superseding indictment, Defendant argues that: (1) a destructive device or machinegun as defined under 26 U.S.C. § 5845 must be both an explosive device and include a "plus" factor under *United States v. Hammond*, 371 F.3d 776, 780 (11th Cir. 2004), and the PPSH and destructive devices did not meet these definitions and (2) the statutes at issue are unconstitutionally vague and thus require the application of the rule of lenity.

Defendant then offers several erroneous facts in support of these arguments, including that "[t]he PPSH and other items in question were not machineguns or destructive devices, or even weapons, but rather destroyed, nonfunctional relics…," that this case involves the possession of "freely available, non-functional components," and multiple characterizations of the charged weapons as "militaria" or "hardware."[1] *See* Def. Mot. at 6–9. Disregarding that the weapons the Defendant possessed were fully functional and complete, Defendant prematurely asks the Court to make factual findings before any evidence is presented. *See United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (stating that "a district court is

---

[1] Without going into detail about each portion of Def. Ex. A, the government generally states that the items listed are irrelevant to the facts of this case in that those items may not be firearms, but the weapons that Defendant possessed factually are. Further, the mere fact that others sell similar items does not make their possession or sale legal.

limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes.").

> B. The statutes are not unconstitutionally ambiguous, and therefore the rule of lenity does not apply.

Without ambiguity, the rule of lenity does not apply. *See United States v. George*, 946 F.3d 643 (4th Cir. 2020) (conditioning application of the rule on the existence of ambiguity in the statute). Courts have consistently found that the relevant statutes of the National Firearms Act (NFA) are not ambiguous. *See United States v. M-K Specialties Model M-14 Machinegun Serial #1447797*, 424 F. Supp. 2d 862, 872 (N.D.W. Va. 2006) (holding that "the plain and unambiguous language of section 5845(b)" requires that firearms incapable of automatic fire are deemed "machineguns" because the weapons can be "readily restored" to so fire); *United States v. TRW Rifle 7.62x51mm Caliber*, 447 F.3d 686, 692 n.11 (9th Cir. 2006) (explaining that to the extent [Defendant] argues that there is some ambiguity in "readily restored" because he can craft a narrower definition, we decline to hold the terms ambiguous or apply the rule of lenity). Indeed, in *United States v. Drasen*, 845 F.2d 731, 738 (7th Cir. 1988) the court considered whether unassembled and never previously assembled constituent parts of a rifle are in fact a short-barrel rifle within the meaning of the National Firearms Act. The court held that the "defendants were not deprived of fair warning that their transactions in short-barrel rifles would violate the Act." *Id.* In addressing the Defendant's argument, it noted that "the principle of lenient construction does not require a court to ignore the obvious intention of the legislature in enacting the statute," noting that the National Firearms Act was designed to "regulate the manufacture, possession, and transfer of 'modern and lethal weapons . . . [that] could be used readily and efficiently by criminals or gangsters'." *Id.*

## II. Congress Did Not Exceed Its Authority Under the Tax and Spending Clauses.

The defendant also suggests that Congress exceeded its tax authority. The argument is not discussed in any thorough manner, but the issue has long been decided. *See United States v. Aiken*, 787 F. Supp. 106 (D. Md. 1992) (prohibiting the possession of an NFA weapon that has not been registered and taxed upon transfer has been found to be constitutional); *see also Zwak v. United States*, 848 F.2d 1179 (11th Cir. 1988); *United States v. Bennett*, 709 F.2d 803 (2d Cir. 1983); *United States v. Homa*, 608 F.2d 407 (10th Cir. 1979); *United States v. Tous*, 461 F.2d 656 (9th Cir. 1972); *United States v. Ross*, 458 F.2d 1144 (5th Cir. 1972); *United States v. Wilson*, 440 F.2d 1068, 1069 (6th Cir. 1971); *Milentz v. United States*, 446 F.2d 111, 112 (8th Cir. 1971); *United States v. Giannini,* 455 F.2d 147, 148 (9th Cir.1972). (The statute, rationally designed to aid in the collection of taxes, is therefore constitutional under Congress' taxing power.); *U.S. v. Cox*, 906 F.3d 1170 (10th Cir. 2018). *U.S. v Haney*, 264 F.3d 1161 (10th Cir. 2001) (18 U.S.C. §922(o) was a proper exercise of Congress' authority under the commerce clause.).

In addition, the defendant alludes to the "impossibility" defense in which only the Tenth Circuit has held that section 922(o) and a violation of section 5861 cannot be charged. The Fourth Circuit rejected the Tenth Circuit's analysis and disposed of this issue long ago. *United States v. Jones*, 976 F.2d 176, 183 (4th Cir. 1992) ("…the amendment to the Gun Control Act effectively rendered possession of certain guns automatic violations of both the Gun Control Act and the National Firearms Act. Yet there is nothing either inconsistent or unconstitutionally unfair about Congress' decision to do so.").

### III. The Charges Against Defendant Do Not Violate the Second Amendment.

Defendant is charged under 18 U.S.C. §§ 5841, 5845, 5861, and 5871 and 18 U.S.C. § 922(o).  In his motion to dismiss, he contends that these charges violate the Second Amendment under the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).  But the Supreme Court previously concluded that regulations of machineguns (and even more so a grenade launcher or antitank projector) fall outside the Second Amendment, and nothing in *Bruen* altered that precedent.

In making his Second Amendment argument, defendant mounts both a facial challenge, requiring the laws at issue to be invalid in all of their applications, *see, e.g., Bucklew v. Precythe*, 139 S. Ct. 1112, 1128 (2019), and an as-applied challenge that turns on the conduct charged in his case.  The facial challenge fails because the Supreme Court has made clear that regulations of machineguns fall outside the Second Amendment.  Defendant's as-applied challenge is not stronger.  As an initial matter, the premise of his as-applied argument—that the offense conduct does not involve assembled weapons—is false and cannot be resolved on a motion to dismiss, *see, e.g., United States v. Weaver*, 659 F.3d 353, 355 n.* (4th Cir. 2011), but even accepting the factual premise of his argument, his as-applied Second Amendment argument makes no sense because it would expand the Second Amendment into a limitation on the regulation of machineguns, grenade launchers, and antitank projectors.  There is no basis for such a prohibition.

The Second Amendment right—"like most rights"—is not unlimited; it does not allow every person "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *D.C. v. Heller*, 554 U.S. 570, 626 (2008).  One important limitation is that *Heller* did not disturb the result in *United States v. Miller*, 307 U.S. 174 (1939).  As *Heller*

5

explained, "The judgment in [*Miller*] upheld against a Second Amendment challenge two men's federal indictment for transporting an unregistered short-barreled shotgun in interstate commerce, in violation of the National Firearms Act, 48 Stat. 1236." *Heller*, 554 U.S. at 621–22.  *Heller* continued that "the Court's basis for saying that the Second Amendment did not apply was … that the *type of weapon at issue* was not eligible for Second Amendment protection."  *Id*. at 622 (emphasis in original).  *Heller* concluded, "We therefore read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns.  That accords with the historical understanding of the scope of the right."  *Id*. at 625.

In describing limits on the scope of the Second Amendment right at the conclusion of the *Heller* opinion, the Supreme Court returned to *Miller* and explained one "important limitation on the right to keep and carry arms.  *Miller* said, as we have explained, that the sorts of weapons protected were those 'in common use at the time.'  We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'"  554 U.S. at 637 (citing *Miller*, 307 U.S. at 179; 4 W. Blackstone, Commentaries on the Laws of England 148–49 (1769); B. Wilson, Works of the Honourable James Wilson 79 (1804); J. Dunlap, The New–York Justice 8 (1815); C. Humphreys, A Compendium of the Common Law in Force in Kentucky 482 (1822); 1 W. Russell, A Treatise on Crimes and Indictable Misdemeanors 271–272 (1831); H. Stephen, Summary of the Criminal Law 48 (1840); E. Lewis, An Abridgment of the Criminal Law of the United States 64 (1847); F. Wharton, A Treatise on the Criminal Law of the United States 726 (1852). *See also State v. Langford,* 10 N.C. 381, 383–384 (1824); *O'Neill v. State,* 16 Ala. 65, 67 (1849); *English v. State,* 35 Tex. 473, 476 (1871); *State v. Lanier,* 71 N.C. 288, 289 (1874)).

*Heller* therefore established that a restriction like the ones at issue in this case, on machineguns, grenade launchers, and antitank projectors, is supported by the historical traditions that place such regulations outside the Second Amendment. *Heller* recognized that "[i]t may be objected that if weapons that are most useful in military service—M-16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause" that refers to militias, but *Heller* explained that "the fact that modern developments have limited the degree of fit between the prefatory clause and the protected right cannot change our interpretation of the right." *Heller*, 554 U.S. at 627–28.

*Bruen* did not change this aspect of *Heller* and did not alter *Heller*'s understanding about the regulation of machineguns like "M-16 rifles and the like." *Bruen* reaffirmed *Heller*'s finding there is a "fairly supported" "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Bruen*, 142 S. Ct. at 2128 (citing 4 W. Blackstone, Commentaries on the Laws of England at 148–149: *Miller*, 307 U.S. at 179). Likewise, Justice Kavanaugh's concurring opinion, joined by the Chief Justice, reiterated an "important limitation on the right to keep and carry arms." *Bruen*, 142 S. Ct. at 2162. "*Miller* said, as we have explained, that the sorts of weapons protected were those in common use at the time. We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons." *Id*. (citing *Heller*, 554 U.S. at 626−627, and n. 26; *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion)).

Multiple courts have correctly relied on *Heller* to conclude that machineguns fall outside the Second Amendment's scope. *See, e.g., United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame*, 822 F.3d 136, 141-44 (3d Cir. 2016); *Hollis v. Lynch*, 827 F.3d 436, 449-51 (5th Cir. 2016); *Hamblen v. United States*, 591 F.3d 471, 473-74 (6th Cir. 2009);

*United States v. Fincher*, 538 F.3d 868, 873-74 (8th Cir. 2008); *United States v. Henry*, 688 F.3d 637, 639-40 (9th Cir. 2012).

Notably, the en banc Fourth Circuit has relied on similar reasoning to hold that a Maryland law regulating *semi-automatic* assault rifles like an AR-15 and large-capacity magazines fall outside the Second Amendment. *See Kolbe v. Hogan*, 849 F.3d 114, 135–37 (4th Cir. 2017). The Fourth Circuit explained, "Are the banned assault weapons and large-capacity magazines "like" "M-16 rifles," i.e., "weapons that are most useful in military service," and thus outside the ambit of the Second Amendment? The answer to that dispositive and relatively easy inquiry is plainly in the affirmative." *Kolbe*, 849 F.3d at 136 (citing *Heller*, 554 U.S. at 627). Although *Bruen* abrogated the en banc Fourth Circuit's alternative holding that relied on intermediate scrutiny, *Bruen* did not abrogate *Kolbe*'s ruling about what counts as "dangerous and unusual weapons" that fall outside the Second Amendment.

Under long-settled law, "alternative holdings are not dicta." *United States v. Fulks*, 454 F.3d 410, 434-35 (4th Cir. 2006); *see also United States v. Title Ins. & Trust Co.*, 265 U.S. 472, 485 (1924) ("[W]here there are two grounds, upon either of which an appellate court may rest its decision, and it adopts both, 'the ruling on neither is obiter, but each is the judgment of the court, and of equal validity with the other.'") (quoting *United Pacific R.R. Co. v. Mason City & Ft. Dodge R.R. Co.*, 199 U.S. 160, 166 (1905)); *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) ("The Court of Appeals concluded that the latter reason was argumentary, the real basis of the decision being that Bullington was denied recovery on the doctrine of res judicata. But where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum."). Although this Court need not go as far as to address the permissibility of a regulation

8

of semi-automatic rifles, the Fourth Circuit's ruling in *Kolbe* remains precedent and *a fortiori* validates a regulation of machineguns, grenade launchers, and antitank projectors.

The government need not offer additional evidence under *Bruen* of "demonstrat[ing] that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. *Heller* already conducted that historical analysis and cited a variety of historical sources. *Heller*, 554 U.S. at 627. Those sources and *Heller*'s reliance on them amply establish a historical tradition of regulating dangerous and unusual firearms.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the Defendant's motion to dismiss.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY


By: \_\_\_\_\_/s/_____
Victoria Liu
Special Assistant United States Attorney
William D. Muhr
Assistant United States Attorney
Attorneys for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number – (757) 441-6331
Facsimile Number – (757) 441-6689
E-Mail Address – victoria.liu@usdoj.gov

CERTIFICATE OF SERVICE

      I certify that on August 25, 2022, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

David Michael Good
David Michael Good, P.C.
780 Lynnhaven Parkway, Suite 400
Virginia Beach, Virginia 23452
Telephone: (757) 306-1331
Facsimile: (888) 306-2608
E-mail: dgood@dgoodlaw.com

Lawrence H. Woodward
Ruloff, Swain, Haddad, Morecock, Talbert & Woodward, P.C.
317 30th Street
Virginia Beach, VA 23451
Telephone: (757) 671-6000
Facsimile Number: (757) 671-6004
E-mail: lwoodward@srgslaw.com

      By: _____/s/_____
      Victoria Liu
      Special Assistant United States Attorney
      William D. Muhr
      Assistant United States Attorney
      Attorneys for the United States
      United States Attorney's Office
      101 West Main Street, Suite 8000
      Norfolk, VA 23510
      Office Number:  (757) 441-6331
      Facsimile Number:  (757) 441-6689
      E Mail Address:  victoria.liu@usdoj.gov