UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PATRICK TATE ADAMIAK,<br><br>Defendant. | Criminal No. 2:22cr47 |

## ORDER

Pending before the Court is a Motion to Dismiss Counts 1–5 of the Superseding Indictment (the "Motion") by Defendant Patrick Tate Adamiak. ECF No. 37. For the reasons stated below, the Motion is **DENIED**.

### I.   BACKGROUND

On June 23, 2022, a grand jury charged Defendant Adamiak with Count 1 – Receive and Possess an Unregistered Firearm, in violation of 26 U.S.C. §§ 5841, 5845, 5861(d), and 5871; Count 2 – Unlawful Possession and Transfer of a Machinegun, in violation of 18 U.S.C. § 922(o); and Counts 3–5 – Receive and Possess an Unregistered Destructive Device, in violation of 18 U.S.C. §§ 5841, 5845, 5861(d), and 5871. Superseding Indictment, ECF No. 28. On July 27, 2022, Defendant filed a Motion to Dismiss the Superseding Indictment. ECF No. 37. On August 5, 2022, the Government submitted a Response to the Motion. ECF No. 43. Defendant did not submit a reply. The Motion is now ripe for adjudication. The Court has determined that a hearing on the Motion is unnecessary, as the issues for decision are adequately presented in the briefs. See E.D. Va. Local Crim. R. 47(J).

1

## II. LEGAL STANDARD

### A. Sufficiency of Indictment

When a criminal defendant challenges the sufficiency of an indictment, the Court applies heightened scrutiny to ensure that every essential element of an offense has been charged. *United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014). The indictment at issue must contain every essential element of the offenses charged, fairly inform a defendant of the charges, enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offenses, and contain a statement of essential facts constituting the offenses charged. *United States v. Spirito*, No. 4:19cr43, 2020 WL 201643, at *1 (E.D. Va. Jan. 13, 2020) (citing *Perry*, 757 F.3d at 171). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the [offense] intended to be punished." *Perry*, 757 F.3d at 171 (cleaned up).

When considering a motion challenging the sufficiency of an indictment, a court is limited to the allegations contained in the indictment. *Spirito*, 2020 WL 201643, at *2 (citing *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012)). "Courts lack the authority to review the sufficiency of evidence supporting an indictment and may not dismiss on a determination of facts that should have been developed at trial." *Id.* (citing *Engle*, 676 F.3d at 415).

### B. Statutory Ambiguity and the Rule of Lenity

"When interpreting a statute, courts must 'first and foremost strive to implement congressional intent by examining the plain language of the statute.'" *United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020) (quoting *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010)). Absent ambiguity, courts apply the statute's plain meaning as determined by reference to the words' ordinary meaning at the time of the statute's enactment. *Id.* If a criminal statute is ambiguous, the rule of lenity applies and requires that the statute's ambiguity be resolved in favor of lenity for the accused. *Id.* "Criminal statutes are 'strictly construed and should not be interpreted to extend criminal liability beyond that which Congress has plainly and unmistakenly proscribed.'" *Id.* (quoting *United States v. Hilton*, 701 F.3d 959, 966 (4th Cir. 2012) (cleaned up)). However, the rule of lenity does not apply merely from the "simple existence of some statutory ambiguity" because "most statutes are ambiguous to some degree." *Id.* (quoting *Muscarello v. United States*, 524 U.S. 125, 138 (1998)) (internal quotation marks omitted).

### C. Second Amendment of the Constitution

Under the Second Amendment, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has interpreted this amendment to protect an individual's right to keep and bear arms for self-defense. *See Dist. of Columbia v. Heller*, 554 U.S. 570, 595 (2008); *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 791 (2010). *New York State Rifle & Pistol Association, Inc. v. Bruen* set the

3

standard for analyzing whether firearms regulation violates the Second Amendment. 142 S. Ct. 2111, 2126 (2022). "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* To determine whether the Second Amendment covers an individual's conduct, courts review the plain text of the Second Amendment, which protects "the people" and their right to weapons "in common use" today for self-defense. *Id.* at 2134; *see also Heller*, 554 U.S. at 624–25 (finding that the Second Amendment protects only the sorts of weapons "in common use at the time" and "typically possessed by law-abiding citizens for lawful purposes"). If the Second Amendment presumptively protects the conduct, then the Government "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation" for the regulation to be constitutional. *Bruen*, 142 S. Ct. at 2126.

## III. ANALYSIS

### A. The Superseding Indictment Sufficiently Alleges the Offenses.

Defendant argues that Counts 1–5 should be dismissed because the Indictment does not sufficiently allege that the devices at issue are machineguns or destructive devices. Mot. to Dismiss at 6–7, ECF No. 37. The Court disagrees. An indictment is sufficient as long as every essential element of the statute and essential facts of the offense are set forth. *Perry*, 757 F.3d at 171. Whether a particular firearm or device qualifies as a machinegun or destructive device is a question of fact to be developed at trial. *See Spirito*, 2020 WL 201643, at *2. Doing so at the dismissal stage is premature, and the level of detail that Defendant argues for is not required.

4

For Count 1, the Indictment needs to allege only that Defendant received and possessed an unregistered firearm. 26 U.S.C. § 5861(d); *see United States v. Wright*, 991 F.2d 1182, 1188 (4th Cir. 1993). The Indictment states that Defendant "did knowingly receive and possess a firearm, namely a PPSH machinegun, which was not registered to the defendant in the National Firearms Registration and Transfer Record." Superseding Indictment at 1, ECF No. 28. The conduct in question occurred "on or about March 15, 2022, through on or about March 28, 2022, in Virginia Beach." *Id*. The allegations for Count 1 track the language of the statute and include relevant facts—namely time, place, and type of firearm. *See Perry*, 757 F.3d at 175. The Indictment sufficiently alleges Count 1.

For Count 2, the Indictment needs to allege only that Defendant unlawfully possessed or transferred a machinegun. 18 U.S.C. § 922(o). The Indictment states that Defendant knowingly possessed and transferred a machinegun—the PPSH machinegun. Superseding Indictment at 2, ECF No. 28. The Indictment further notes that the possession of the PPSH machinegun was unlawful because it was unregistered (as discussed under Count 1) and that the violation occurred "[o]n or about March 15, 2022, through on or about March 28, 2022, in Virginia Beach." *Id*. at 1–2. Like the allegations in Count 1, the allegations for Count 2 track the language of the statute and include relevant facts—namely time, place, and type of firearm. The Indictment sufficiently alleges Count 2.

For Counts 3 to 5, the Indictment needs to allege only that Defendant received and possessed an unregistered destructive device. *See* 26 U.S.C. §§ 5845(a) (defining

5

"firearm" as including destructive devices), 5861(d) (making it unlawful for any person to receive or possess an unregistered firearm). Title 26 U.S.C. Section 5845(f) defines "destructive device" to include any explosive, grenade, rocket with propellent charge of more than ¼ ounce, mine, or similar device, or any combination of parts designed or intended for use in converting any device to a destructive device. 26 U.S.C. § 5845(f). Count 3 of the Indictment alleges that Defendant "did knowingly receive and possess a destructive device, namely a M79, 40 mm grenade launcher, which was not registered to the defendant in the National Firearms Registration and Transfer Record." Superseding Indictment at 2, ECF No. 28. Counts 4 and 5 allege the same but with respect to an M203, 40mm grenade launcher and two RPG-7 variant recoilless antitank projectors. *Id.* at 2–3. The violations all occurred on or about April 7, 2022 in Virginia Beach. *Id.* The allegations for Counts 3 to 5 track the language of the statute and state the time, place, and types of destructive devices Defendant allegedly possessed. The Indictment sufficiently alleges Counts 3 to 5. As such, the Court finds that the Indictment was sufficient to apprise Defendant of the charges against him and identify the essential elements of the crime charged.

## B. The Statutes Are Not Unconstitutionally Ambiguous

Defendant next argues that the National Firearms Act (NFA) and Gun Control Act (GCA) are unconstitutionally vague under the Fifth Amendment because "a reasonably intelligent person [would not have] foresee[n] that the conduct charged in this case—the mere possession of freely available, non-functional components—would be deemed criminal." Mot. to Dismiss at 8, ECF No. 37. Defendant further

6

argues that because the statute is unconstitutionally vague, the Court should apply the rule of lenity and resolve any ambiguity in the criminal statute in favor of Defendant. *Id.* at 10. The Court disagrees.

Under 26 U.S.C. § 5845(b), the definition of "machinegun" includes any weapon that "can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger"; "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun"; and "any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." 26 U.S.C. § 5845(b). Under 26 U.S.C. § 5845(f), the definition of "destructive device" includes "any type of weapon . . . which will, or which may readily be converted to, expel a projectile by the action of an explosive or other propellant" and "any combination of parts either designed or intended for use in converting any device into a destructive device . . . and from which a destructive device may be readily assembled." 26 U.S.C. § 5845(f). The plain language of the statute unambiguously indicates that the possession of non-functional components of a machinegun or destructive device may fall under the statutory definitions of "machinegun" and "destructive device." *See, e.g., United States v. TRW Rifle 7.62X51mm Caliber, One Model 14 Serial 593006*, 447 F.3d 686, 688–89 (9th Cir. 2006) (noting that "readily" and "restored" both have plain and unambiguous ordinary meanings); *United States v. Drasen*, 845 F.2d 731, 737–38 (7th Cir. 1988) (finding fair warning that the National Firearms Act may apply to unassembled parts given its purpose of

regulating the manufacture, possession, and transfer of weapons); *United States v. M-K Specialties Model M-14 Machinegun*, 424 F. Supp. 2d 862, 869–70 (N.D.W. Va. 2006) (rejecting a vagueness challenge to 26 U.S.C. § 5845); *United States v. Whalen*, 337 F. Supp. 1012, 1018–19 (S.D.N.Y. 1972) (holding that the National Firearms Act is not unconstitutionally vague). Whether the devices that Defendant possessed actually fall under the definition of "machinegun" and "destructive device" is a question for the factfinder. The Court finds only that the statute is not unconstitutionally ambiguous and places a reasonable person on notice that the possession of components may subject the owner to regulations on "machineguns" or "destructive devices." Because the statute is not unconstitutionally ambiguous, the rule of lenity does not apply. *See George*, 946 F.3d at 645.

Further, the parties disagree over whether the weapons Defendant possessed were fully functional and complete. *Compare* Mot. to Dismiss at 6, ECF No. 37 ("The PPSH and other items in question were . . . destroyed, nonfunctional relics."), *with* Resp. in Opp'n at 2, ECF No. 43 ("[T]he weapons the Defendant possessed were fully functional and complete."). This is a question of fact to be developed at trial, and the Court will not make any factual findings on what Defendant actually possessed at this stage.

Additionally, Defendant's citation to *Gun Owners of America, Inc. v. Garland* is not persuasive. 19 F.4th 890 (6th Cir. 2021). *Garland* analyzes only whether the NFA is silent or ambiguous on the "precise question at issue—whether 'machinegun' includes bump-stock devices." *Id.* at 904. The Sixth Circuit raises this question as

8

part of its *Chevron* analysis to determine the legitimacy of a Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) rule clarifying that bump-stock devices fall within the definition of "machinegun." *Id.* at 904–905. The Sixth Circuit's review of an ATF rule is not applicable to the instant case.

### C. The Charges Against Defendant Do Not Violate the Second Amendment.

Defendant argues that the charges against him violate the Second Amendment based on the Supreme Court's decision in *Bruen*. 142 S. Ct. 2111 (2022). Defendant claims that the NFA and GCA are facially unconstitutional and are unconstitutional as applied to Defendant under *Bruen*. *See* Mot. to Dismiss at 15–17, ECF No. 37. The Court strongly disagrees with this argument.

The Second Amendment's individual right to bear arms is not unlimited. *Heller*, 554 U.S. at 626. Under the framework established in *Bruen*, the Second Amendment presumptively protects conduct covered by its plain text. *Bruen*, 142 S. Ct. at 2126. To determine whether this presumption of protection exists, the Supreme Court in *Bruen* looked to whether the individuals seeking the protection are part of "the people" whom the Second Amendment protects and whether the regulated weapons are weapons "in common use" today for self-defense. *Id.* at 2134. Assault weapons, large-capacity magazines, M-16 rifles, and other types of "weapons that are most useful in military service" are not weapons in common use and are not protected under the Second Amendment. *Kolbe v. Hogan*, 849 F.3d 114, 136 (4th Cir. 2017) (quoting *Heller*, 554 U.S. at 627). In the instant case, the weapons in question—machineguns

9

and destructive devices—are not weapons "in common use" and thus fall outside of the Second Amendment's protection.

Like M16 rifles, machineguns are capable of fully automatic fire. *Id.* In fact, machineguns are, by definition, fully automatic firearms. 26 U.S.C. § 5845(b). Machineguns also share the military features of M-16 rifles and assault weapons that make them "devastating and lethal weapon[s] of war." *Hogan*, 849 F.3d at 136. In many respects, machineguns are even further from the definition of weapons "in common use" than M16 rifles, which already fall outside the Second Amendment's scope under *Heller*. 554 U.S. at 627. As such, machineguns are not weapons "in common use" and are not protected under the Second Amendment.

Destructive devices are also not weapons "in common use." *See United States v. Tagg*, 572 F.3d 1320, 1326 (11th Cir. 2009) (finding that pipe bombs, a type of destructive device, are not typically possessed by law-abiding citizens for lawful purposes). Based on statistics from the ATF, there were only 3.3 million registered destructive devices in the United States as of May 2021. *See* Firearms Commerce in the United States: Annual Statistical Update 2021 at 15–16, ATF (May 2021); *cf. Kolbe v. O'Malley*, 42 F. Supp. 3d 768, 788 (D. Md. 2014) (noting that assault weapons are likely not in common use because, accepting that there are 8.2 million assault weapons in civil stock, assault weapons represent no more than 3% of the civilian gun stock), *aff'd on other grounds*, *Hogan*, 849 F.3d at 136. Destructive devices are not typically possessed by law abiding citizens and are not protected under the Second Amendment. Because both machineguns and destructive devices are not weapons "in

common use," the Second Amendment does not presumptively protect an individual's right to use these weapons. Defendant's argument that the NFA and GCA are facially unconstitutional is unavailing.

With respect to Defendant's as-applied challenge, the Court declines to reach this question because the parties dispute whether the offense conduct involved assembled weapons. The Court cannot resolve this question at the motion to dismiss stage as the facts need to be further developed at trial.

### D. Congress Has Not Exceeded Its Authority Under the Tax and Spend Clause.

Finally, Defendant briefly argues that Congress exceeded its authority under the Tax and Spend Clause. Mot. to Dismiss at 5–6, ECF No. 37. The Court disagrees. Many circuits have found that the NFA is constitutional under the Tax and Spend Clause, *see United States v. Wilson*, 440 F.2d 1068, 1069 (6th Cir. 1971) ("[T]he provisions of 26 U.S.C. § 5801 et seq . . . . are within both the taxing power and the commerce power of Congress.") (citation omitted); *United States v. Tous*, 461 F.2d 656, 657 (9th Cir. 1972) ("[26 U.S.C. § 5861] is a valid exercise of the power of Congress to tax."); *United States v. Cox*, 906 F.3d 1170, 1179 (10th Cir. 2018) ("[T]he NFA is a valid exercise of Congress's taxing power."); *Zwak v. United States*, 848 F.2d 1179, 1183 (11th Cir. 1988) (finding that taxes assessed pursuant to 26 U.S.C. §§ 5811 and 5821 are within the taxing power of Congress); *see also United States v. Aiken*, 787 F. Supp. 106, 108 (D. Md. 1992) (finding the prohibition on possessing an unregistered firearm under 26 U.S.C. § 5861(d) constitutional as a valid revenue measure), and the GCA was enacted under the Commerce Clause, *see United States v. Haney*, 264

11

F.3d 1161, 1171 (10th Cir. 2001) ( "18 U.S.C. § 922(o) is constitutional and does not violate either the Second Amendment or the Commerce Clause."). Given the weight of authority on this issue, the Court concludes that Congress has not exceeded its authority under the Tax and Spend Clause.

## IV. CONCLUSION

For the forgoing reasons, Defendant Patrick Tate Adamiak's Motion to Dismiss Counts 1–5 of the Superseding Indictment (ECF No. 37) is **DENIED**. The Clerk is **REQUESTED** to forward a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**

/s/
Arenda L. Wright Allen
United States District Judge

September 22, 2022
Norfolk, Virginia