IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:22-cr-47 |
| | ) | |
| PATRICK TATE ADAMIAK, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE TRIAL TESTIMONY OF
DEFENDANT'S PROPOSED EXPERT WITNESS**

The United States of America, by Jessica D. Aber, United States Attorney, William D.

Muhr, Assistant United States Attorney, and Victoria Liu, Special Assistant United States

Attorney, moves this Court to exclude any testimony from Mr. Daniel O'Kelly, as a purported

expert witness in an unspecified field.  In the alternative, the United States moves this Court to

limit Mr. O'Kelly's testimony to relevant and permissible topics.

Here, defendant ADAMIAK gave the United States notice of expert witness on October

10, 2022.  *See* Ex. A (defendant's expert notice).  This notice does not meet the disclosure

requirements of Fed. R. Crim. P. 16(1)(C) because it does not include both a summary of Mr.

O'Kelly's opinions and the bases and reasons for those opinions.  In addition, the defendant has

not met his burden to establish that the expert testimony is reliable and relevant in accordance

with *United States v. Forrest*, 429 F.3d 73 (4th Cir. 2005).  Defendant has not established under

Rule 16 that Mr. O'Kelly is an expert in any relevant field, nor that his opinion is based on any

sort of reliable principle or method.  Furthermore, Mr. O'Kelly's testimony would not help the

jury understand the evidence or decide the facts at issue under Fed. R. Evid. 702.

## AUTHORITIES

In *United States v. Forrest*, the Fourth Circuit explained that a federal district court "performs an important 'gatekeeping' function in deciding whether to admit expert testimony under Federal Rule of Evidence 702." 429 F.3d at 80. Whether testimony assists the trier of fact is the "touchstone" of Rule 702. *See United States v. Campbell*, 963 F.3d 309, 314 (4th Cir. 2020) (explaining that unhelpful expert opinion is inadmissible). Not only should expert testimony be relevant, but it should also be reliable. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) (explaining the test for expert testimony admissibility). When an expert intends to give technical or scientific testimony, the Court should consider the following factors to assess whether such testimony is reliable and relevant: "(1) whether the particular scientific theory 'can be (and has been) tested'; (2) whether the theory 'has been subjected to peer review and publication'; (3) the 'known or potential rate of error'; (4) the 'existence and maintenance of standards controlling the technique's operation'; and (5) whether the technique has achieved 'general acceptance' in the relevant scientific or expert community." *United States v. Crisp*, 324 F.3d 261, 266 (4th Cir. 2003) (quoting *Daubert*). The trial court has broad discretion whether to admit expert testimony and will not be reversed absent an abuse of discretion. *See United States v. Barsanti*, 943 F.2d 428, 432 (4th Cir. 1991) (explaining the standard of review on appeal).

Reliable expert testimony must be more than subjective belief or unsupported assumptions. *See Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019) (noting that any inferences must be derived using scientific or other valid methods). Relevant expert testimony will have "a valid scientific connection to the pertinent inquiry" and will assist the trier of fact to

2

understand the evidence or to determine a fact in issue. *Id.* at 232 (citation omitted).  Proposed testimony that concerns matters within the common knowledge and experience of a lay juror does not pass muster. *See generally United States v. Dorsey*, 45 F.3d 809, 814 (4th Cir. 1995). Nor may an expert witness offer an opinion where the subject matter goes beyond the witness's area of expertise. *See Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).

## ARGUMENT

### I.    Defendant Fails to Mention Any Bases or Reasons for Mr. O'Kelly's Conclusions.

In addition to the expert notice, the defendant provided Mr. O'Kelly's curriculum vitae (CV) to the government.  *See* Ex. B (Mr. Daniel G. O'Kelly's CV).  Notably absent was any report based on an examination of the firearms and, indeed, the defendant turned down multiple opportunities for any defense expert to inspect the charged firearms.  Instead, the notice merely concludes that the PPSh41 "cannot be readily restored to shoot, automatically more than one shot without manual reloading, by a single function of the trigger" and the RPG-7s are "deactivated and inoperable" and are "neither fully functional nor able to be readily converted to expel a projectile by the action of an explosive or other propellant." Ex. A at 1–2.  Defendant's notice, devoid of any mention of a scientific method or test conducted by Mr. O'Kelly, fails to meet his burden of establishing that Mr. O'Kelly's conclusions have reliable bases and reasons.

The only opinion with any type of reasoning attached to it pertains to the RPG-7s, for which he states that they must be deactivated and inoperable because they "have a hole in the chamber/barrel [and] the grip housings contained no firing mechanism."  *Id.* at 2.  Without any further analysis, Mr. O'Kelly's observations do not meet the standard required for expert testimony.

## II.     Mr. O'Kelly Lacks Expertise in the Identification, Operation, and Design of Firearms, Including Machineguns and Destructive Devices.

Mr. O'Kelly also lacks the expertise pertinent to this case. In the expert notice, the defendant states that Mr. O'Kelly's "expertise is based on his education, training, and his previous employment with the ATF, as outlined in his curriculum vitae (attached)." Ex. A at 1; *see also* Ex. B. According to his CV, he has covered a myriad of topics to include "use of force, self-defense with a firearm, ballistics, gunshot residue, interstate nexus, federal and state firearm regulations, trade dress, ATF rulings, ATF compliance and procedures, shooting reconstruction, firearm classification, firearm design, and wrongful death." Ex. B at 1. There is no further explanation of how any of these purported areas of expertise qualify him to render an opinion in this case.

Mr. O'Kelly's experience as a retired ATF Special Agent also does not render him a firearms identification, operation, and design expert. Since at least 1989, field agents like Mr. O'Kelly have been instructed that they are not authorized to make classification decisions regarding machineguns or destructive devices – that role is designated to specialists at the Firearms and Ammunition Technology Division (FATD) (formerly the Firearms Technology Criminal Branch). *See* Ex. C, §11(d) (ATF O 3310.4B). Special agents can make use of these experts, who are the analysts that examine and determine the classification of samples. *See id.* at §11(f) ("Experts are available at Headquarters for the identification and classification of firearms . . . Special agents can make use of these experts . . ."). Mr. O'Kelly has never had a role in FATD or its predecessor, has never received the advanced training provided to ATF's Firearms Enforcement Officers (FEOs) who make machinegun or destructive device classifications, and has never been tasked by ATF with making classification decisions about machineguns or

4

destructive devices.  In the three pages of purported "specialized training" only one potentially relevant course entitled "The Machineguns and Machinegun Conversions" from 2015 appears. *See* Ex. B at 5.  In 2019, Mr. O'Kelly gave one presentation entitled "Machineguns and Clandestine Conversions." *See id.* at 8.  No training or experience pertaining to destructive devices appears on his CV.

**III.    Mr. O'Kelly's Testimony Would Not Be Helpful to the Jury.**

**A.    Mr. O'Kelly's Conclusions Offer Nothing More Than Counsel's Arguments.**

Because the defendant's expert notice offers no details of how Mr. O'Kelly developed his opinions, his opinions offer nothing more than what counsel would argue in closing argument. This Court should not conclude that Mr. O'Kelly's proposed testimony, which lacks specificity, would assist the jury under Fed. R. Evid. 702.  A jury is able to hear the evidence in this case and determine—based on reason and common sense—whether the facts establish that the charged machinegun and destructive devices meet the definitions stated by the Court in the jury instructions.  The jury will have the benefit of FEO examinations of each charged firearm, as well as the thorough cross-examination of each FEO who conducted those examinations.  To allow Mr. O'Kelly's testimony, however, would be to allow him to testify that if he were a juror, he would conclude that these firearms do not meet the definitions of machinegun and destructive devices.

**B.    Additional Proposed Testimony About the Law Should Be Excluded.**

Regardless of whether Mr. O'Kelly's testimony is entirely excluded, at minimum the portion of his proposed testimony regarding the following legal questions should be excluded: (1) "that the 'RPG7s' in this case did not constitute a combination of parts either designed or

intended for use in converting any device into a destructive device as defined in 26 U.S. Code § 5845(1) and (2) and from which a destructive device may be readily assembled";  (2) "the M203 and M79 in this case were removed from the purview of the NFA . . . [t]he receivers and barrels were stored separately, locked in Mr. Adamiak's safe, from the barrels"; and (3) "current and prior ATF regulations and rulings, relevant to the evidence in this case, the various definitions of machinegun and destructive device, and the component parts of the items charged in the superseding indictment." Ex. A at 1–3.  Not only is such proposed testimony confusing to any jury, but it is also generally inadmissible. *See United States v. McIver*, 470 F.3d 550, 561–62 (4th Cir. 2006) (stating "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible.").

Although the general statement that Mr. O'Kelly intends to testify as to "current and prior ATF rulings" is qualified by "relevant to the evidence in this case," the inclusion of "definitions of machinegun and destructive device, and the component parts of the items charged in the superseding indictment" may foreshadow Mr. O'Kelly's intention to testify regarding the "frame or receiver" of a machinegun.  This Court should not permit Mr. O'Kelly to testify regarding the topic that he touts in his CV as causing "the Bureau of ATF undertaking a 2-5 year rewrite of the definition of a firearm 'frame or receiver,' as the one that they have applied for 48 years does not match 60% of the firearms on the market." Ex. B at 1.  In the instant case, the relevant definition of a machinegun is separate and apart from the "frame or receiver" clause; as a complete firearm, the charged machinegun is "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single

function of the trigger." 26 U.S.C. § 5845(b).  Therefore, any testimony about the definition of a "frame or receiver" of a machinegun would be both irrelevant and confusing to the jury.

Similarly, Mr. O'Kelly intends to opine on the inapplicable definition of destructive device with regard to the charged RPG-7s.  Such testimony is irrelevant because the RPG-7s are "any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter." 26 U.S.C. § 5845(f)(2).  Admitting Mr. O'Kelly's testimony on a different definition of destructive device would be needlessly confusing and unhelpful to the jury.

Finally, Mr. O'Kelly's proposed testimony regarding possession of the M203 and M79 falls squarely in the purview of the jury's determination.  The jury will hear the facts of the case and determine whether the defendant possessed both parts of the M203 and M79 grenade launchers as required by the law—far be it for Mr. O'Kelly to usurp that task or insert his own opinion on the law.

**C.    Proposed Testimony Regarding Defendant's Statements and Actions or Other Facts Not in Evidence Should Be Excluded.**

Regardless of whether Mr. O'Kelly is entirely precluded from testifying, he should nevertheless not be permitted to testify about the defendant's statements and actions or any other facts not in evidence.  In defendant's expert notice, Mr. O'Kelly's proposed testimony includes: (1) "Mr. Adamiak has never owned a complete, fully working automatic PPSh41, and he has never handled or fired one" and (2) "the barrels [of the M203 and M79 were] removed prior to Mr. Adamiak taking possession . . . Additionally, Mr. Adamiak had never mounted the barrels to

the receivers." Ex. A at 1–2. Unless the defendant gets on the stand and testifies to these facts, Mr. O'Kelly should be precluded from making mention of any of these facts not in evidence.

**D.      Proposed Testimony Regarding Any Second Amendment Issues Already Decided by this Court Should Be Excluded.**

Mr. O'Kelly also intends to testify regarding the "history of the model PPSh41," and the "history and availability of RPG7s." Ex. A at 1–2. This Court should exclude any testimony that creates the false impression that either the charged machinegun or the charged destructive devices are protected under the Second Amendment. As the Court noted in its Order Denying Defense's Motion to Dismiss, "[i]n the instant case, the weapons in question—machineguns and destructive devices—are not weapons 'in common use' and thus fall outside of the Second Amendment's protection." ECF 46 at 9–10. As the Second Amendment challenge raised before trial has been decided here, any testimony that seeks to impermissibly raise the issue again should be excluded.

## **CONCLUSION**

Accordingly, the Court should Order the exclusion of the proposed defense expert's trial testimony or, in the alternative, limit his testimony as requested by the government.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
Victoria Liu
Special Assistant United States Attorney
William D. Muhr
Assistant United States Attorney
United States Attorney's Office
World Trade Center, Suite 8000
101 W. Main Street
Norfolk, Virginia 23510
Office Number - 757-441-6331
Facsimile Number: 757-441-6689

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of October 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

                                        _____/s/_____
                                        Victoria Liu
                                        Special Assistant United States Attorney
                                        William D. Muhr
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        World Trade Center, Suite 8000
                                        101 W. Main Street
                                        Norfolk, Virginia 23510
                                        Office Number - 757-441-6331
                                        Facsimile Number: 757-441-6689

10